

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2006

# Juli v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2886

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Juli v. Atty Gen USA" (2006). *2006 Decisions.* Paper 982.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/982

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2886

_____

FNU JULI,

Petitioner,

vs.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A79-734-969)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 16, 2006

_____

Before: MCKEE and GARTH, Circuit Judges, and LIFLAND, District Judge[*]

(Opinion Filed: June 1, 2006)

_____

OPINION

_____

_____

[*] The Honorable John C. Lifland, Senior District Judge for the District of New Jersey,
sitting by designation.

GARTH, <u>Circuit</u> <u>Judge</u>:

Fnu Juli, an Indonesian of Chinese ethnicity, petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). That order summarily affirmed the denial of his application for withholding of removal and protection under the Convention Against Torture ("CAT"). His petition essentially rests upon a single criminal act – mobs, excited by anti-Chinese sentiment, attacked and burned his place of business, along with many other Chinese-owned businesses, during the May 1998 public upheaval and rioting in Indonesia. We have recently held, however, on a substantially similar set of facts, that isolated criminal acts of this sort are not sufficiently severe to support a claim of either past persecution or likely future persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 536-37 (3d Cir. 2005). Accordingly, we will deny the petition.

I.

Writing solely for the benefit of the parties, we recount only those facts essential to our analysis. Juli claims persecution in Indonesia on account of his Chinese ethnicity and Christian (specifically, Roman Catholic) religion. He entered the United States on or about April 28, 2001, as a non-immigrant visitor. As he remained in this country beyond the authorized period, the immigration authorities placed him in removal proceedings. He thereafter filed his application for asylum and withholding of removal, and for protection under CAT.

Juli submitted an affidavit in connection with his asylum application. At his

removal hearing, he relied largely, if not exclusively, upon this affidavit, testifying only in response to specific questions from government counsel and the presiding immigration judge ("IJ").  According to the affidavit, Juli suffered general harassment and discrimination by native Indonesians on account of his ethnicity and religion.  He also described one specific incident of alleged persecution.  In May 1998, as ethnic and religious tensions escalated throughout the country and as Indonesia's Chinese Christian population became the target of widespread attacks perpetrated by Muslim Indonesians, rioters attacked and burned down his business and many other Chinese-owned businesses. Although Juli then decided to flee to the United States, he remained in Indonesia for nearly three more years, living with his family in the same place without further incident.

As noted, Juli eventually arrived in the United States in April 2001.  He has three children, all of whom continue to reside in Indonesia.  His seven siblings also remain in Indonesia.  Other than intermittent street crimes, the record suggests that his family remains in Indonesia without meeting harm.

Once in the United States, Juli waited more than two years –  until July 2003 –  to file his asylum application, apparently because he had considered returning to Indonesia. At his removal hearing, the IJ indicated that Juli's asylum application, filed more than one year after his arrival in the United States, was statutorily time-barred.  Juli, through counsel, thereupon withdrew the asylum application, acknowledging that the application was untimely and that no extraordinary circumstances excused its lateness.  He continued forward, though, with his claims for withholding of removal and protection under CAT.

The IJ denied Juli's remaining claims, finding that he failed to show a clear probability of persecution upon deportation to Indonesia. The IJ noted that the relevant country reports showed improvement in ethnic relations between Chinese and native Indonesians. The IJ further noted that Juli's children and siblings remain safely in Indonesia, thus diminishing the reasonableness of his alleged fear of future persecution. Inasmuch as Juli withdrew his alternative request for voluntary departure, the IJ ordered him removed to Indonesia.

The BIA affirmed without opinion. Juli now petitions for review on his asylum and withholding of removal claims.[1]

II.

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252. Where, as here, the BIA adopts the IJ's opinion, we review the IJ's decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). We do so under the highly deferential substantial evidence standard. *Id.* at 272. Under this standard, we will uphold the findings of the IJ unless the evidence "not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001).

An alien seeking withholding of removal must establish by a "clear probability"

---

[1] We will consider only his claim for withholding of removal. His asylum claim, insofar as he seeks our review on that claim, is not properly before us, having been withdrawn as untimely during the removal proceedings. In addition, Juli's petition for review makes no argument as to his claim for protection under CAT. We therefore deem that claim waived. *Konan v. Attorney Gen. of the U.S.*, 432 F.3d 497, 500 n.2 (3d Cir. 2005).

that his life or freedom would be threatened in his country of origin because of, *inter alia*, his race or religion. *Chang v. INS*, 119 F.3d 1055, 1059 (3d Cir. 1997). To meet this burden, the applicant must demonstrate that it is more likely than not that he will be persecuted upon his return. *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). An applicant can establish eligibility for withholding of removal either by demonstrating past persecution or by showing a likelihood of future persecution. *See* 8 C.F.R. § 1208.16(b). A demonstration of past persecution creates a rebuttable presumption that the applicant's life or freedom would be threatened in the country of removal. *Id.*

### III.

Our recent decision in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), compels the denial of the instant petition for review. At the heart of Juli's petition lies the claim that the general pattern of molestation and violence against Chinese-Indonesians, culminating in the May 1998 looting and burning of his place of business and other Chinese-run businesses, is sufficiently severe to constitute past persecution or evince a clear probability of future persecution. We rejected substantially similar claims in *Lie*, *supra*. We there held, under the less onerous standard for asylum claims, that isolated criminal acts, perpetrated by unknown assailants, are not sufficiently severe to be considered persecution. *Id.* at 536; *see also Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). We have also indicated that "persecution does not encompass all treatment that our society regards as unfair, unjust,

-5-

or even unlawful or unconstitutional." *Fatin*, 12 F.3d at 1240. Leaving aside, therefore, any lingering issues as to the motivation of the perpetrators or government sponsorship of the disturbances, the incidents and events recounted in Juli's affidavit are not sufficiently severe to constitute persecution. As such, Juli cannot establish past persecution.[2]

Nor can Juli establish a credible fear of future persecution. We agree with the IJ that the fact that Juli's children and siblings remain safely in Indonesia seriously undermines his alleged fear of future persecution. *See id.* ("[W]hen family members remain in petitioner's native country without meeting harm . . . the reasonableness of a petitioner's well-founded fear of persecution is diminished."). Furthermore, we held in *Lie*, on a similar (and seemingly more persuasive) record, that the recurring anti-Chinese violence and the otherwise generally harsh conditions facing Chinese-Indonesians are not sufficiently widespread to constitute a "pattern or practice" of persecution. *Id.* at 537. As Juli makes no showing that he would be individually singled out for persecution, we conclude that substantial evidence supports the IJ's decision that Juli failed to make the requisite showing to merit withholding of removal.[3]

---

[2] The IJ did not explicitly address past persecution, holding instead that the country reports and the continued presence of his family in Indonesia contradicted Juli's alleged fear of future persecution. *See* 8 C.F.R. § 1208.16 (b) (demonstration of past persecution creates *rebuttable* presumption of likely future persecution) (emphasis added). We add that there is no record support for past persecution, particularly when that record is examined, as it must, through the lens of our decision in *Lie*, *supra*.

[3] Juli also argues that the Attorney General should exercise his discretion against deportation. "If the alien fails to establish that his or her life or freedom will be threatened upon return so as to require that deportation be withheld, the Attorney General may still exercise her discretion and not deport the alien by a grant of asylum." *Senathirajah*, 157 F.3d at 215. Here,

\* \* \*

For the foregoing reasons, we will deny Juli's petition for review.

---

however, Juli withdrew his asylum claim as untimely, and as the government points out, the alien must be statutorily eligible before discretion can be exercised.